Please call the next case. In agree h at the Lawson Coun lets Elizabeth Ed at Gold. morning. Your Honor please also come to the folks. yourself and go ahead. And we're here. Please enter. Good morning. Melissa Vesica appearing for appellee. Thank you very much. Jenna Austin, please. The court on behalf of the appellant, how much time do you wish to reserve for rebuttal? Please proceed. So this is a due process case. Um, client's chapter 13 case was dismissed on, uh, grounds that prove later, uh, to be untrue, that they, they were not over the debt limit. Debtor number two had signed a amended plan. There were no objections filed to the plan. And that's important that there were no objections filed. Cause not only were they not filed by the trustee, there were none filed by any creditors. Were there ever any filed by creditors? No. So the idea that, um, the debtor's counsel made an error in noticing the hearing is really a non-fact because no one had filed an objection. If someone had filed an objection, then that would indicate that they had read the plan and noted the incorrect date, at which point it could have been fixed. But since no one filed an objection, no one was harmed because no creditor intended to appear. And in fact, no creditor had appeared at any of the previous, um, confirmation hearings. Well, you still would have to re-notice it. Correct. It would have to have been re-noticed. The harm was that you weren't given that chance. Correct. And that's what we, uh, mark as the major error. The major error being we didn't have time to go back and sort the math and show that the IRS debt was counted twice and to show that the stripped-off second was not a personal liability, therefore not an unsecured debt in the case. And had we had, well, had prior counsel had notice of these issues, I certainly could have addressed them. But when you show up to a hearing and these things are sprung on you, that's unfair. Did your client request additional time? Yes, he did. So what Mr. Burnman said was, I would like to brief that. And the judge made some comment about, you lose on that issue. That was the gist of what he said. But then there wasn't really any formal request for a specific time, was there? No, there was no request for a specific time, no. But he did ask for time to brief the issue. Well, for regular counsel to brief the issue. Yeah, for regular counsel, yeah. And I mean, I will concede it does point out the failures of using a parent's counsel.  Yeah, that, you know, there is an issue there in terms of somebody not knowing the case. But you could use a parent's counsel if they were properly briefed and if they knew what the issues were. So if they had raised the issue before the hearing, either appearance counsel could have been briefed or regular counsel could have appeared. Correct. And that's where it fell apart. There's no evidence in the record that I could find that this issue of the debt limit was never raised before. That's correct. It was never raised before. This was like first time, brand new. Here we are. And as for the issue of the delay in the number of continuances, counsel wasn't just sitting on his hands. You know, he dealt with the IRS debt, he stripped off the second. But there was some missteps. There were some missteps. I would say, yes, I have to concede that. Yeah. There were missteps. And it was 14 months long at that point in time without a confirmation. That is correct. But he was making the payments and the trustee had a substantial amount of money on hand that could have gone to creditors had the case been confirmed. And with respect to the issue that the proof of claim of the first mortgage was not dealt with, they were off in their math by $1,000. And the plan clearly says, your claim trumps what's in the plan. So the first had no problem. There would have been no problem with confirming the plan. The first would have been paid that extra $1,000 because their claim trumped the plan. So even though the plan wasn't perfect, it was certainly confirmable. And the trustee's argument is, oh, well, delay to creditors, delay to creditors. I think the dismissal was a significant harm to creditors because there was a big pool of money to be distributed. Well, there was an objection originally about feasibility, which really went to the IRS, which resolved. But it seems like given the 14 months, the feasibility concerns were fairly soundly addressed by the payment of the $2,500 per month. Yeah, he was making the payments. So that raises an interesting point since we're coming up on a year since it was dismissed. If we were to accept your arguments and either reverse remand, what happens to that gap in the plan between last August when it was dismissed and essentially, you know, this August? Well, I would argue that the case get set back. That'd be told or? Yeah, they would be told. Is there any support for that? We're kind of a little off here, but I mean, it makes a real, you know, 12 months of $2,500 payments is awfully hard to come up. Yeah. Well, I think in fairness to the debtor, it should be told. And that amount of time should not count towards his 60 months that he can be in Chapter 13. We would leave that to the trial judge. Is that the, I mean, I don't. It's an interesting issue, but it is beyond the scope of this, so we don't need to go any further. But, you know, I would argue that it be told as well as the amount of time towards his 60 months to pay for the plan. Counsel, you characterize your due process argument, due process is, you know, just adequate opportunity to notice that something, to fix something. It's yet quite a while to fix all the problems in this case. Aren't you, what you're really saying here is that the judge just didn't have support in the record for the grounds that the judge stated for dismissing the case. It really isn't due process. You just think the judge got it wrong. Well, the judge did get it wrong. That, that is true. Well, say it. Yeah. He said it more eloquently than I could have, but not only did she get it wrong, she got it wrong because her facts were on notice and had there been notices, we wouldn't be here today. Yeah. Although, but at some point you went back to court, you said, well, we are eligible. They had the numbers wrong. The trustee, uh, uh, honestly admitted that the numbers are wrong and the judge still dismissed the case. Correct. That isn't due process. That's just getting it wrong. That is true. Um, when you're preparing these briefs, it's pretty hard sometimes to write. I'm sorry, your honor, but da, da, da, da, da, um, we share that problem. Yeah. I do have to appear back in front of that judge at some point. So, um, you know, how, uh, are you phrased things? Can you come back? You have almost seven to six minutes and 43 seconds. Why don't you take that rebuttaling? Thank you. Counsel judge, get it wrong. Good morning. May it please the court, Melissa Besker for the chapter 13 trustee, Elizabeth Rojas. Um, no, the judge, did you pick one of the microphones? No, the judge did not get it wrong. Um, the court has, um, has discretion, uh, to, um, uh, to dismiss a case. What did she just miss the case for? Pardon me? What did she dismiss the case for? What, what was the basis? Uh, for an unjustifiable, uh, uh, delay to creditors. All right. And so there was unjustifiable delay, but also it has to be prejudicial. So why was it unjustifiable? Um, well, it was unjustifiable because the case was filed, uh, for, with 14 months, 14 months had, had eliminated a substantial lien and recharacterized the IRS debt to a limited amount of 2,500 for secured, unsecured. I didn't see priority. Um, seems like things were happening. Nothing ever happens as expeditiously as anybody wants, but there were major things happening in that, in that case. Why was it unreasonable? Well, it was unreasonable because the length of time, um, I, I wouldn't. If the time alone can't make it unreasonable though, it has to be contextual. And in this context where there are actions going, uh, fairly lockstep, why was that unreasonable? Well, but, but creditors had not received any payments. While it's true that the debtors were making their payments, those payments, that those monies, funds could not be dispersed. Uh, and as the. What would it have taken to disperse the money, given that you, you put an, you put an erroneous, I don't know if you person, but somebody put an erroneous theory in front of the judge, which I don't think you can gain say that that was at the trial level or at the initial hearing level, that argument that they didn't qualify had to have carried tremendous weight with her. Um, she said it did. So once we, once you realized or your client realized that was wrong, what was left to get this case confirmed and to get that money that was sitting there, which was what, like $35,000 or something like that to creditors? Uh, the, uh, the plan would have had to have been noticed again. Okay. And what, so, so we're talking another 30 days to get it noticed rough, you know, whatever rough numbers to get it noticed. Anything else? Um, because you didn't even object to your client, didn't even object to the plan that was pending. I mean, there was clearly a notice problem. They've acknowledged that no question, we'd have to have some additional notice. And the judge could have said, Hey, if you don't make your payment in the interim, I'm sui sponte dismissing it. And I'd be fine with that given the passage of time, but I'm really trying to struggle. You're saying there's prejudice because they didn't get anything. So what would it take? Was it, was it not on the horizon? We're ready to get the, grab the gold ring and just traverse the money. I think that the court was really concerned with the delays with the, uh, the nature of the delays as well as the length of time. And, and I think it came to a breaking point at that, at that time where it would just be another delay and there's no guarantee. What was the nature of the delay? You keep saying delay for 14 months, but again, the 14 months isn't alone. The indicator that there's no cutoff that 12 months is therefore per se under, under delay. What was the undo part of it? And it wasn't really explained in the, in the transcript short as it was largely because as judge Taylor indicated, the focus was on the debt limit. Well, the, um, the debtor, uh, had needed to file a motion to, um, avoid the lien, which I right away originally, and also the objection to the claim took quite a while to accomplish, which. Well, but in fairness, that, that objection was assumed within the motion to avoid lien. And it appears from a reading of the record that there was a realization that the IRS's lien was larger than just the real property. So it had to be an objection. I, and that's what I mean. It could have been done quicker but it was being done. And it's akin to the judge Taylor's point as the need for notice. It's not like when the debtor filed the second plan, the amended plan that they did not notice that they realized it had to be noticed. It was noticed. They just got it wrong. So that seems to be the, the, the flavor of this case is some things were done wrong, but they don't, there's nothing that suggests that anything was done maliciously wrong, but they were actually being done, which is more than a lot of cases. So why was it, why was it undue and where, where is the harm? That's the trouble I'm having. Well, the court, the bankruptcy court, in my experience does not generally see that length of a delay. And I really think it fell on the length of time. Was that in the record? Pardon me? Was that in the record? I don't believe, no, the court did not specifically state that. No. But, but there were many hearings, I, I, and matters were discussed. And part of the problem is we don't have the transcripts of any of the prior hearings. So we, you know, you really can't argue, I think here today that warning was given or that, you know, that's not a tool you have in your toolbox. Right. Well, except that the local bankruptcy rules do specifically say that the plan does need to be noticed. And the, and the error in the noticing in, it really appears that this was just a recycled notice because that was the original hearing date. And it seems that, you know, the debtor after so long would want to get the case confirmed and would. I'm sure the debtor did. Debtor doesn't necessarily appear that it was sloppy. It was debtor's lawyers may have been. So you're going to penalize the 14 months of fairly substantial payments because you used the form and didn't catch the 2017 was, was on there instead of 2018 and the right date. Well, counsel represents debtor debt. Counsel is acting on behalf of the debtor. Counsel, as you can see, the panel is sort of struggling. You know, we're bankruptcy judges. None of us would have dismissed this case, but we understand that the judges are different and they have different standards. And some judges are much more hard-nosed than others. And so, and we give deference and the hard-nosed judges prevail in this court more often than not, because we understand they run their court and, and we're not here to second guess that kind of judgment or to substitute our judgments for theirs. The problem here is that when we part, when we push away some of the problems here, frequently the complaints that are being made here are just wrong. The eligibility issue, which came up was just wrong. The other things that the debtor needed to do, the debtor accomplished. And so it's kind of hard to understand for us why this judge dismissed this case on this record. Well, as far as the, and what your answer is, it just took too long, but that's, it seems like there should be more than that. And I, well, and as, as far as the, the eligibility issue and the issues that were brought up, which were an error, again, debtor's counsel did not dispute those. And in fact, well, it didn't address the, that's the, if he had notice of that being a problem, he would have disputed it because he would have been able to see what the problem was. Well, it was a, it's a very simple problem and debtor's counsel should be familiar with what is, what the schedules are and what the, I think the eligibility issue is, is substantive. And, and a, frankly, the fact that this is where I, I don't think I disagree, but I do see a due process point, which is you're coming in with a, a significant argument. You haven't objected to the plan. You haven't raised it. Your client, I keep saying you and I'm not, but your client hasn't raised it previously. It has sort of a gotcha quality to it, and I'm not sure it would be right as it was factually wrong, and I'm not sure it'd be right as a matter of law to say what you do after the case is ongoing. We usually look at the, I think the Ninth Circuit is telling us to look at the, the time of the filing. So that was a complicated legal issue and the attorney who was there, again, acknowledged they had appearance counsel. Would they have had appearance counsel if they knew there was a serious attack on eligibility? I doubt it. Would they have addressed it if they knew there was going to be a serious doubt, attack on eligibility? I doubt it. You know, that was, that really changed the whole complexion of that hearing in a fundamental way. So I, I, I just, I guess I'm, I mean, I'm emoting now more than really asking you a question, which I guess, I guess I get to do that. But why isn't that a huge problem here? And if she had the opportunity on reconsideration to, to tell us why the simple fact of delay was enough, we don't have those findings. Do you mean the court? Right. I see. Yes. Well, I think also the, as far as the eligibility issue, Mr. Bernman, I don't know, but he is generally familiar with the cases that he appears on. And I believe that the court would put a lot of faith in what Mr. Bernman said. But, but you're missing the point too, which is your client got it wrong. No, I, no, I, I agree. Really wrong. Yeah. So, I mean, it's somewhat disarming to say, well, it was their fault for not catching our mistake, which was not noticed previously. That, that sprung on him at a hearing. I understand. But except that, except that instead of saying I had never heard that issue before debtors, we request to, to brief this or to review the documents instead, Mr. Bernman said, my only argument is that, is that it would have been secured. He, he went off and actually made an argument. So your argument now is that his mistake was he believed you and entrusted you when you gave him that number. Well, I, I, well, I, I think, yes, I think that he should have said that, that he, that he didn't believe that that was true or hadn't reviewed the schedules and see that it wasn't true. Would you, could you help me? Cause I don't, until this case, I never heard of a parents council. Is it, is that a practice in your district? Yes, it is. It's a California thing. It's fairly common. And, and there are some council that do appear regularly. And some are better than others. And, and some actually do review the files and try to be familiar with the issues in the case. Do you, do you honestly think though, that an appearance council, even the best would go back and reread the schedules where the issue is this plan that's in front of them after all the water that's gone under the bridge and would be anticipating an eligibility argument that you've emphasized the case was impending for 14 months, eligibility is usually raised way in the rear view mirror. And again, I'm not sure it's correctly raised when you change the character of debt during the course of the case as a matter of law. Well, it was it was raised because the the motion to avoid the lien and the objection presented that issue. But it wasn't, it wasn't an issue that we... How long did the trustee know they were going to be doing this? I mean, it's 14 months at some point, way in the rear view mirror, those motions were filed. And we've, you've told me that we had eight hearings. Why wasn't it, why didn't you say earlier, Hey, if you went on those, you're not going to be eligible. I mean, I just, there, there's a gotcha quality to this that I have a real problem with. Right. I mean, I, I just, I, I don't like the, the gotcha. I, I, and I, I don't, I don't mean that pejoratively. Because it's, it wasn't something we were saving. It was just something that we, when we review the file again for the ninth or 10th time before the hearing, that issue came up because we were looking at the new plan with the, with the, the now resolved objection and lien avoidance. And assuming that... So it wasn't, it just, it was an issue that we hadn't had the foresight at the beginning of the case to look at, to say, well, if you are going to do this, then this might be a problem. What's the appropriate response at that point? Isn't that appropriate response? We better go look at this. Let's continue the hearing? Um, or is the appropriate response case dismissed? Well, again, I think the court was relying on, um, unfortunately the, the trustee, what, what the trustee said was incorrect and also relying on debtors apparent agreement with that. I think the debtor asked a different version of the issue. I don't think the debtor agreed. Um, I think the debtor also relied on the trustee, which is a, which is a good thing. Usually you can rely on the trustee not to make an argument that's absolutely, I mean, there were two arguments. There was the didn't sign the document argument wrong. And the, um, two arguments that were just flat out dead bang wrong. And that's unusual. It's very unusual for a trustee to do that. In my experience, at least it happens to all of us, but it's unusual. No further. Thank you. Counsel, you have some time for rebuttal. Thank you. Your to please the court. I don't specifically have anything really new to say, but I certainly agree. You know, here we are at confirmation and there's two wrongs. Mr. Burneman did ask for time to brief an issue, but I think that a issue he identified to brief was incorrect because he didn't understand the nature, the full nature of the argument. You're over the debt limit. And I think he was thinking that the issue would have been resolved at the beginning of the case in the sense that the second would have been stripped off. So does it count for the debt limit? And obviously it does. But I think that's what he grasped. When I look at what he said and the response to the judge, which was essentially, no, you lose on that issue. And so she didn't give him time to set it over one more time for that to be briefed. I don't think he grasped that it was the IRS debt had been counted twice. I think he was thinking of you file a case and you want to strip off a lien. Well, that lien counts as of the day you filed the case. So I think there was some confusion on his part. When he asked for time to brief. But isn't the important point that he didn't acquiesce? That is the important point. He did not acquiesce. He did not say, OK, you win. Here we are. And I'm quite familiar with Mr. Burnham and he's an appearance counsel. And generally speaking, he does a great job. He asks, you know, for documents when we ask him to appear on one of our cases. And I'm also familiar with the employees of the trustee's office, which include Ms. Besseker, who I admire and I would believe, you know, standing at the council table. And I'm sure any attorney would or any judge would as well. Exactly. And this was on a motion calendar, right? I mean, this seems like it came on fairly deep into a motion calendar. Well, they do it kind of oddly. They, in Santa Barbara, the motions, everything gets set at 10. Motions get heard first, followed by confirmation. But if your case has a motion and it's on for confirmation, the judge will do the both, the two of them together. So you might look at the calendar, oh, geez, I'm 69, I'm 70 or something like that. But if you have a motion on and you're number four, boom, you go right to the top. This was only for just confirmation though, wasn't it? I think so. Yes, it was just confirmation. I mean, that's part of the point too, is that there was no motion. Yeah, there were no motions. But it was an uncontested confirmation, is that right? Correct. It was uncontested. No one objected. Not even a creditor. So Judge Taylor's right, Judge Kurtz is wrong. It does have due process concerns. I'm used to that, by the way. Well, it's a flavor, not a... Yeah. It's one of my favorite flavors. So when it comes to arguing, I always tend to go there. Moline case is one of my favorites. I have no additional comments if you have. Thank you very much. The matter is...
judges: Kurtz, Taylor, Spraker